UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZITHROMIA LIMITED, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GAZEUS NEGOCIOS DE INTERNET SA, et al.,<br><br>    Defendants. | Case No. 17-cv-06475-JD<br><br>**ORDER RE SERVICE AND EX PARTE APPLICATION FOR TRO**<br><br>Re: Dkt. Nos. 2, 3 |

Plaintiffs' ex parte application for alternative service on defendants, who are located in Brazil, is **DENIED**. Dkt. No. 3. Plaintiffs filed the complaint and the service request simultaneously on November 7, 2017. Plaintiffs say they sent copies of the service application by email and Federal Express to defendants and their lawyers in Brazil and the United States. Dkt. No. 6. It is not clear whether a request to accept service was included in these communications.

A method of service "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2004) (internal quotation marks omitted). It is true that the Court may order service on foreign defendants under Federal Rule of Civil Procedure 4(f)(3) "by other means" not prohibited by international agreements, including by email and service on U.S. counsel. *Xilinx, Inc., v. Godo Kaisha IP Bridge 1*, 246 F. Supp. 3d 1260, 1263-64 (N.D. Cal. 2017). But the circumstances here do not warrant immediate resort to those measures. Plaintiffs have not afforded defendants any opportunity to respond to the email and Federal Express communications. Plaintiffs do not state

that defendants have refused or evaded service. They do not point to any specific facts indicating an inability to serve defendants in Brazil and rely only on a generic comment by the U.S. State Department that service in Brazil through letters rogatory can be time-consuming and "problematic." Dkt. No. 3 at 8 (quoting *Liberty Media Holdings, LLC v. Vinigay.com*, No. 11-cv-280-PHX-LOA, 2011 WL 810250, at *3 (D. Ariz. Mar. 3, 2011)). This comment appears to have been withdrawn, *J.B. Custom, Inc. v. Amadeo Rossi, S.A.*, No. 10-cv-326, 2011 WL 2199704, at *6 (N.D. Ind. June 6, 2011), and other courts disagree that letters rogatory are the exclusive means of serving process in Brazil. *See Brands v. GVD International Trading, S.A.*, 282 F.R.D. 21, 24 (D. Mass. 2012).

Plaintiffs have not shown that they have in fact faced any hurdles that would warrant alternative service. For the reasons discussed below, plaintiffs' claim of urgency does not provide a reason in itself to invoke alternative service. The application is denied without prejudice and may be renewed if the circumstances change.

Plaintiffs' "ex parte application" for a TRO, Dkt. No. 2, is also **DENIED**. As an initial matter, plaintiffs do not clearly address the standards that should govern the application. They rely almost entirely on *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012), but that case is a far cry from the situation here. It involved a lawsuit in the United States during which the defendant ran to a court in Germany to obtain an injunction against the plaintiff. *Id*. at 879-80. The district court enjoined enforcement of the foreign injunction because the defendant's actions "frustrated [the district court's] ability to adjudicate issues properly before it." *Id*. at 880 (alteration in original). The circuit affirmed the injunction against the foreign order and held that the "threshold consideration" in these circumstances is "whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined." *Id*. at 882 (internal quotation marks omitted). None of these factors or showings are present here.

Consequently, the traditional standards should apply to the TRO request, the only question being which approach fits best. On the one hand, plaintiffs call their application "ex parte," which connotes that they did not provide notice to the other side and so the request would fall under the

1    requirements of Federal Rule of Civil Procedure 65(b)(1). On the other hand, they filed a proof of
2    service stating that they gave notice of the TRO application to a variety of lawyers and individuals
3    affiliated with defendants. Dkt. No. 6. In that case, when notice has been given, the application is
4    evaluated under the standards for a preliminary injunction motion. *Fang v. Merrill Lynch, Pierce,*
5    *Fenner & Smith, Inc.*, No. 16-cv-6071-JD, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016),
6    *aff'd*, 694 Fed. Appx. 561 (9th Cir. 2017).

The service complications here make the question of notice rather murky, but it need not be decided because the application fails under either approach. Immediate and irreparable harm -- which must appear "clearly" in the case of Rule 65(b)(1), and be threatened or likely under the preliminary injunction standard -- is an element that plaintiffs have not established. Plaintiffs were aware of the facts underlying the complaint and the TRO application as early as July 10, 2017, when Apple advised them that it had "temporarily removed" their applications from the App Store in response to the Brazilian legal proceedings. Dkt. No. 2 at 7. Any ambiguity on this score was eliminated by July 27, 2017 when Apple confirmed that "the apps will not be restored to the Store." *Id*. at 8. Plaintiffs nevertheless waited for over three months before seeking a TRO. It appears that during this time they made some legal inquiries in Brazil, but that neither explains nor excuses the long delay before they acted here. The record does not show that the TRO request is based on anything significant that plaintiffs did not know some time ago. This undercuts plaintiffs' claim that they will be immediately and irreparably harmed without a TRO. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (en banc).

Plaintiffs also fail to show a likelihood of success on the merits or the existence of serious questions for litigation. The unverified complaint and the TRO papers make heated references to "secret" arbitration proceedings in Brazil that have purportedly affected plaintiffs' commercial rights. *See, e.g.*, Dkt. No. 1 ¶¶ 3-5, 30; Dkt. No. 2 at 11; Dkt. No. 3 at 6. But that alone does little to show a likelihood of success or a serious question. Arbitration proceedings are typically confidential in the United States and plaintiffs provide no reason to believe the practice is different or otherwise suspicious in Brazil. In addition, simply criticizing the secrecy of the arbitration does not shed much light on the merits of plaintiffs' claims or the likelihood they will prevail. On this

3

scant record, the Court is reluctant to inject itself into legal proceedings in other jurisdictions.

The Court is also concerned about the ex parte aspect of the request. As our circuit has made clear, ex parte TRO applications are disfavored and justified in "very few circumstances." *Reno Air Racing Ass'n, Inc., v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). This is because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Id*. (quoting *Granny Goose Foods, Inc., v. Teamsters*, 415 U.S. 423, 438-39 (1974)). Taking plaintiffs' own ex parte label at face value, they have not shown why relief should be granted before defendants have had an opportunity to be heard. Fed. R. Civ. P. 65(b)(1). There is "a very narrow band of cases" where ex parte proceedings might be proper because notice to a defendant might result in actions that would undermine a plaintiff's case, *Reno Air*, 452 F.3d at 1131, but nothing here suggests that this case falls in that limited domain.

**IT IS SO ORDERED.**

Dated: November 14, 2017

JAMES DONATO
United States District Judge