1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS & LLEWELLYN LLP
Marc R. Lewis (California Bar No. 216887)
mlewis@lewisllewellyn.com
John F. Frost (California Bar No. 302134)
jfrost@lewisllewellyn.com
505 Montgomery Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 800-0590

Attorneys for Respondent
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZITHROMIA LIMITED, et al.<br><br>                              Plaintiffs,<br><br>          v.<br><br>GAZEUS NEGOCIOS DE INTERNET SA, et al.,<br><br>                              Defendants. | Case No. 3:17-cv-06475-JD<br><br>**NONPARTY APPLE INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

LEWIS +
LLEWELLYN
LLP

## I.      INTRODUCTION

The Plaintiffs in this action move to compel nonparty Apple Inc. ("Apple") to comply with a subpoena (the "Subpoena").  The Subpoena seeks documents and communications related to Brazilian arbitration and court proceedings to which the Defendants in this action ("Defendants") are parties.  In response to the Subpoena, Apple investigated and found that Apple Computer Brasil Ltda. had received copies of responsive records as a result of its court-ordered, third-party appearance in the Brazilian court proceedings.  Apple further learned that all those responsive records are subject to a secrecy order issued by the Brazilian court, and Apple would violate that secrecy order and be subject to liability if it produced the responsive records in this litigation.

Despite the Brazilian court's secrecy order, which Apple and Plaintiffs discussed at length, Plaintiffs nonetheless contend that Apple should produce the protected information for reasons that pertain solely to rules governing the disclosure of confidential information related to arbitrations.  Plaintiffs generally ignore the existence of the Brazilian court's secrecy order and the liability that Apple would incur for violating it.  Plaintiffs also ignore key parts of the record and apply the wrong legal standard.  Under the correct legal standard, which considers principles of international comity, this Court should deny the motion.

## II.     BACKGROUND

### A.      Plaintiffs Subpoena Apple.

Plaintiffs served the Subpoena on Apple on or about December 17, 2018.  In general, the Subpoena requests documents, communications, and information related to the "BRAZILIAN PROCEEDINGS," which the Subpoena defines as "mean[ing] and refer[ing] to the proceeding(s) in Brazil between [Defendants] and Guilherme Pereira e Oliveira, including, but not limited to, Process Nos. 0046809-50.2017.8.19.001 and 0045419-452017.8.19.001 and Arbitration No. 13/2015."

The Subpoena's requests generally fall into the following five categories:

1)      Documents "relating to or concerning the BRAZILIAN PROCEEDINGS."  Reqs. 1, 2, 8 and 12.

2)      Communications between Apple and Defendants. Reqs. 3–5.

NONPARTY APPLE'S OPPOSITION TO PLTF'S MOTION TO COMPEL, Case No. 3:17-cv-06475-JD

LEWIS + LLEWELLYN LLP

1

2

3)      Communications between Apple and the arbitrators who presided over the "BRAZILIAN PROCEEDINGS."  Req. 6.

4)      Documents relating to Apple's email response to Plaintiffs stating that "the apps will not be restored to the Store at this time.  The removal occurred in compliance with a court order rendered in case #0045419-45.2017.8.19.0001, which is pending before the 5th Business Court of Rio de Janiero, RJ."  Req. 7.

5)      Documents relating to claims that Plaintiffs' apps infringed Defendants' copyrights or that otherwise related to one or more takedown notices sent pursuant to the Digital Millennium Copyright Act ("DMCA"). Reqs. 9–11.

**B.      Apple Responds And Objects To The Subpoena.**

Apple responded and objected to the Subpoena on December 31, 2018.  Apple's objections included the following:

- The Subpoena seeks documents that should be obtained through party discovery, *citing*, *inter alia*, *Nidec Corporation v. Victor Company of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) and Rule 26(b)(2)(c)(ii).

- The Subpoena places an undue burden on Apple in that it seeks "[a]ll DOCUMENTS relating to or concerning the BRAZILIAN PROCEEDINGS," *citing*, *inter alia*, *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) and Rule 26(b)(1).

- The Subpoena expressly seeks documents and communications that are protected by the attorney-client, attorney work-product, and other privileges, *citing*, *inter alia*, Rule 26(b)(1).  Apple further emphasized that several requests seek documents and communications "that relate to arbitration proceedings, most—if not all—of which are presumptively privileged or confidential."

- The Subpoena seeks confidential business information that does not appear proportional to the cases needs, *citing*, *inter alia*, Rule 26(b)(1).  Apple further emphasized that "placing the burden and expense of production on Apple, a third party to this litigation and a third party to the arbitration proceedings to which the subpoena relates, is particularly undue."

- In light of these and other confidentiality concerns, Apple further requested that Plaintiffs "seek the Court's entry of a protective order that would maintain the confidentiality of Apple's information."

After raising those objections, Apple invited Plaintiffs to meet and confer regarding the subpoena.[1]

_____

[1] Apple also raised an objection related to the Subpoena's timing, explaining that "Apple's annual holiday break started December 24, 2018, and it extend[ed] through January 2, 2019."

2

LEWIS + LLEWELLYN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.      Apple And Plaintiffs Meet And Confer.**

Apple first met and conferred with Plaintiffs on January 8, 2019.   Plaintiffs' counsel explained that Plaintiffs' apps were removed from Apple's App Store as a result of certain Brazilian arbitration and court proceedings.  Counsel claimed that Apple removed those apps pursuant to an arbitration order that was issued in Brazil.  Counsel further stated that Defendants were parties to those arbitration proceedings—but Plaintiffs were not—and that the arbitrator had determined that Plaintiffs' apps improperly used Defendants' source code.  Counsel further explained that the Brazilian arbitrator issued an injunction prohibiting Apple and others from permitting the use of Plaintiffs' games.

Counsel then discussed the Brazilian court proceedings, describing those proceedings as an enforcement action and explaining that Apple had appeared in those proceedings as a third party. Counsel then requested that Apple identify the proceedings in which Apple had appeared as a third party and produce Apple's communications with Defendants.

Counsel also stated that Plaintiffs' action was filed pursuant to one or more takedown notices submitted to Apple pursuant to the DMCA.  Counsel alleged that the takedown notices included a copy of the arbitration award, and that the takedown notice was submitted in early 2017, before Plaintiffs' apps were removed from the App Store in June or July of that year.

In response, counsel for Apple requested that Plaintiffs provide copies of any available filings that Apple made in the enforcement action.  Apple's counsel further reiterated the need for a protective order, emphasizing the presumed confidentiality of an arbitration and requesting that the protective order contain an Attorneys' Eyes Only provision.  Apple's counsel further explained that it was reluctant to produce documents that were in the possession of a party, but nonetheless offered to take Plaintiffs' information and requests to Apple.

**D.      Apple Conducts Its Investigation In Response To The Subpoena.**

Apple conducted an investigation in response to the Subpoena.  That investigation ultimately revealed the following information relating to Plaintiffs' apps and this matter.

Apple Computer Brasil Ltda. ("Apple Brazil") was ordered to appear as a third party in certain civil proceedings before Brazilian courts (the "Brazilian Court Proceedings").  *See* Duarte

3

LEWIS +
LLEWELLYN
LLP

1    Decl. ¶¶ 4, 7.  The Brazilian Court Proceedings were initiated by Defendants in connection with

2    arbitration proceedings pending before Câmara FGV de Conciliação e Arbitragem, a Brazilian

3    arbitration institution (the "Brazilian Arbitration Proceedings").  *See id.* ¶¶ 4–5.

4            During the Brazilian Arbitration Proceedings, the presiding arbitrators granted an

5    injunction and issued an order requiring Apple Brazil to provide information about certain apps

6    and remove those apps from the App Store.  *See id.* ¶¶ 5–6.  That injunction and order was then

7    put before the Brazilian courts during the Brazilian Court Proceedings, and the Brazilian courts

8    were asked to order that Apple Brazil comply with the injunction and order.  *See id.* ¶ 7.  The

9    Brazilian courts granted that request and ordered Apple Brazil to comply.  *See id.*  Apple Brazil

10   responded that the order should be directed to Apple.  *See id.* ¶ 8.  Apple Brazil also conveyed the

11   order to Apple in good faith and subject to the Brazilian court's secrecy order.  *See id.*

12           Through Apple Brazil, Apple submitted a letter to the Brazilian court providing the

13   requested information and reported to the Brazilian court that Apple had complied with the

14   Brazilian court's compliance order.  *See id.* ¶¶ 8, 14–15.  In the process, Apple received records

15   relating to the Brazilian Arbitration Proceedings, the Brazilian Court Proceedings, and the

16   Brazilian court's order that Apple Brazil remove apps from the App Store.  *See id.*

17           Apple's investigation also revealed important information regarding the confidentiality of

18   the Brazilian Arbitration Proceedings and the Brazilian Court Proceedings.  Specifically, the

19   Brazilian courts presiding over the Brazilian Court Proceedings placed those proceedings under a

20   secrecy order.  *See id.* ¶¶ 9–14.  Apple and Apple Brazil are bound by the Brazilian court's secrecy

21   order because of their roles in the Brazilian Court Proceedings.  *See id.* ¶¶ 14–15.  Apple further

22   learned through its Brazilian counsel that disclosing records in violation of the secrecy order

23   would subject Apple and/or Apple Brazil to liability.  *See id.* ¶¶ 11, 14, 16–17.

24           Apple's Brazilian counsel also informed Apple that at least one Plaintiff—Parconia

25   Limited—submitted a request to the court presiding over the Brazilian Court Proceedings.  *See

26   id.* ¶ 18.  In that request, Parconia Limited sought access to the records of the Brazilian Court

27   Proceedings that were protected by the court's secrecy order.  *See id.*  The Brazilian court denied

28   access to those records in a published order.  *See id.*

4

1   Finally, Apple's investigation revealed that it has no documents or information related to

2   the Brazilian Arbitration Proceedings or the Brazilian Court Proceedings that were obtained

3   outside of those proceedings, including claims of copyright infringement or DMCA takedown

4   notices.  *See id.* ¶ 16.  Ricardo Duarte explained the documents and information related to this

5   case in paragraph 16 of his declaration:

> 16.   Apple and Apple Brazil have informed me that they have not received documents or information related to the Brazilian Arbitration Proceedings or Brazilian Court Proceedings outside those proceedings, nor has Trench Rossi, as counsel for Apple and Apple Brazil, received documents or information related to the Brazilian Arbitration Proceedings or Brazilian Court Proceedings from any other source.  Apple and Apple Brazil have not informally communicated with Gazeus Negócios de Internet S.A. or Gazzag Serviços de Internet Ltda. about those proceedings. In other words, all documents and information related to the Brazilian Arbitration Proceedings and Brazilian Court Proceedings in the possession of Apple and Apple Brazil are subject to the Brazilian court's secrecy order.[2]

13   **E.   Apple Further Meets And Confers With Plaintiffs.**

14   After learning this information, Apple's counsel met and conferred with Plaintiffs' counsel

15   on January 15.  During that meet and confer, Apple's counsel explained that Apple was bound by

16   the Brazilian court's secrecy order with respect to any records in its possession that it received

17   pursuant to the Brazilian Court Proceedings and the Brazilian Arbitration Proceedings.  Apple's

18   counsel further explained that Apple possessed no information related to this matter that was

19   obtained outside those proceedings, and expressly mentioned that no DMCA takedown notice had

20   been submitted by Defendants.[3]  Finally, Apple's counsel explained that Apple could not produce

21   information sought through the Subpoena because such a production Apple would violate the

22   Brazilian court's secrecy order and subject Apple to liability.

23   Plaintiffs' counsel responded that she would confer with her colleagues, then contact

24   Apple's counsel with further requests.  Plaintiffs then served this Motion.  If Plaintiffs had

---

2 If the Court so requests, Apple will produce declarant Duarte as a witness to testify regarding these matters.  If the Court makes that request, Apple asks that Duarte be permitted to testify telephonically because he lives in São Paolo, Brazil.

3 Had a DMCA takedown notice been submitted, Apple would have put the parties in contact with one another to address the dispute in accordance with its policies.  As the history of this matter indicates, Apple has never put the parties in contact with one another to address this dispute.

5

1  contacted Apple before filing the Motion, Apple was prepared to offer Duarte's declaration to

2  further establish Apple's obligations related to the Brazilian court's secrecy order.

3  **III.    THE COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL.**

4      **A.    Plaintiffs' Motion Improperly Ignores The Brazilian Court Proceedings.**

5      Plaintiffs argue that Apple "was not a party to the Brazilian arbitration" and that "it is

6  difficult to believe that all communications between Apple and Defendants concerning Plaintiffs

7  or the Brazilian proceedings or internal documents concerning Plaintiffs' Apps are confidential as

8  those were not documents introduced in the arbitration proceedings." *See* Mot. at 2.  In other

9  words, Plaintiffs suggest that Apple has not established that it must maintain the confidentiality of

10  the records it obtained through the Brazilian Court Proceedings because their confidentiality is

11  pursuant to the rules and agreements governing the Brazilian Arbitration Proceedings.  Plaintiffs'

12  position is unsupported.

13      First, Duarte's declaration clearly establishes that Apple did not communicate with

14  Defendants regarding the Brazilian Arbitration Proceedings or the Brazilian Court Proceedings.

15  Furthermore, the subpoena itself corroborates this; the email referred to in Request 7 allegedly

16  stated that "[t]he removal [of the apps] occurred in compliance with a court order rendered in

17  case #0045419-45.2017.8.19.0001, which is pending before the 5th Business Court of Rio de

18  Janiero, RJ."  In other words, Apple removed the apps pursuant to the Brazilian Court Proceedings

19  and not pursuant to communications with Defendants, any claim by Defendants of copyright

20  infringement, or a DMCA takedown notice submitted by Defendants.

21      Second, in focusing on the arbitration, Plaintiffs consciously ignore the existence of the

22  Brazilian ***Court*** Proceedings.[4]  Both Request number 7 and the Subpoena's definition of the

23  "BRAZILIAN PROCEEDINGS" establish the Plaintiffs' knowledge of the Brazilian court's role

24  in their dispute with Defendants.  Furthermore, the Brazilian Court Proceedings were discussed

25  during the meet and confer process, and it was revealed that Plaintiffs knew Apple participated in

26

27  _____

28  [4] The closest Plaintiffs come to acknowledging the existence of the Brazilian Court Proceedings consists of their opaque discussion of "Brazilian proceedings" and a passive reference to Brazilian Civil Procedure Code, Article 189, IV in footnote three.  *See* Mot. at 2.

6

LEWIS +
LLEWELLYN
LLP

1    those proceedings as a third party.  Finally, Plaintiffs must be aware of Brazilian court's secrecy

2    order—one of them requested access to those records, but the Brazilian court denied that request.

3        Plaintiffs ignore the Brazilian Court Proceedings and have therefore asked the Court to

4    apply the wrong standard for determining whether Apple should be obligated to produce

5    documents subject to the Brazilian court's secrecy order.  But because the Brazilian Court

6    Proceedings are relevant, this Court should apply principles of international comity.  And under

7    those principles, this Court should deny the Motion.[5]

8        **B.**    **Principles Of International Comity Doom The Motion.**

9        The Supreme Court articulated the legal standard governing Apple's obligation to produce

10   documents in *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern*

11   *District of Iowa*, 482 U.S. 522, 545–46 (1987).  There, the Supreme Court held that "both the

12   Rules and the Hague Evidence Convention are permissible vehicles by which a litigant in

13   American courts may conduct civil discovery internationally."  *St. Jude Med. S.C., Inc. v. Janssen-*

14   *Counotte*, 104 F. Supp. 3d 1150, 1160 (D. Or. 2015) (citing *Aeroospatiale*, 482 U.S. at 545–46.

15   Here, in accordance with its inherent authority, the Court should "insist upon the use of [Hague

16   Evidence] Convention procedures to obtain evidence, just as it may regulate and restrict the

17   conduct of discovery under the Federal Rules."  *See id.* (citing *Aeropostiale*, 482 U.S. at 546).

18       The Court's decision to insist upon using the Hague Evidence Convention's procedures to

19   obtain evidence is "a delicate task of adjudication that depends upon the situations of the parties

20   before the court and the concerns of international comity."  *Id.* (citing *Aeropostiale*, 482 U.S.

21   at 533, 546) (internal quotation marks and citations omitted).  Several nonexclusive factors are

22   relevant to this comity analysis, including (1) the importance of the subpoenaed documents or

23   information to the underlying litigation, (2) the degree of specificity of the request, (3) whether the

24   information originated in the United States, (4) whether alternative means for securing the

25   information are available, (5) the extent to which compliance or noncompliance with the subpoena

26   would undermine the United States' interests or the interests of the state where the information is

27

28   ⁵ If Plaintiffs raise new arguments related to the appropriate test or any other test in their reply to
     this opposition, Apple requests the opportunity to file a sur-reply and address those arguments.

LEWIS +
LLEWELLYN
LLP

1  located, (6) "the extent and nature of the hardship that inconsistent enforcement would impose

2  upon the person," and (7) "the extent to which enforcement by action of either state can

3  reasonably be expected to achieve compliance with the rule prescribed by that state." *Richmark*

4  *Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (citing *Aerospatiale*,

5  482 U.S. at 544 n.28.) (internal quotation marks and brackets omitted).  Here, these factors clearly

6  favor denying Plaintiffs' motion to compel Apple to produce documents.

7       First, and most obviously, neither party to the litigation is an American citizen and this

8  dispute originated in the jurisdiction of a foreign state—Brazil.  Thus, under the third factor, the

9  information did not originate in the United States.  And under the fourth factor, there should be an

10  alternative means of securing this information: pursing this action against Defendants in a more

11  appropriate forum, like Brazil.  Therefore, both the third and fourth factors weigh in favor of

12  denying the Motion.

13       Second, enforcing the Subpoena would result in Apple's violation of the Brazilian court's

14  secrecy order.  Accordingly, granting the Motion would certainly undermine the interests of

15  Brazil, which has an obvious interest in having secrecy orders issued by its courts respected by the

16  courts of other states.  Similarly, the United States has an interest in having its discovery orders,

17  including the protective orders that preserve the confidentiality of certain discovery, respected by

18  Brazil courts and other foreign jurisdictions.  Those jurisdictions may be less inclined to do so if

19  courts in the United States order nonparties to produce documents that are protected by a Brazilian

20  court's secrecy order.  As a result, the fifth factor also weighs in favor of denying the Motion.

21       Third, enforcing the Subpoena would inherently subject Apple to a hardship related to

22  inconsistent enforcement.  Specifically, granting the Motion would require Apple to violate either

23  the Brazilian court's secrecy order or the order of this Court.  Such a hardship, which constitutes

24  an undue burden under Rules 26(b)(1) and 45(d)(1), should not be imposed on nonparty Apple.

25       Finally, none of the other factors militate in favor of granting the Motion.  To be clear,

26  Apple recognizes that the first factor—which considers the importance of the subpoenaed

27  documents or information—is implicated in this analysis.  However, in these circumstances, that

28  factor bolsters Apple's position that Plaintiffs should either seek the requested documents and

NONPARTY APPLE'S OPPOSITION TO PLTF'S MOTION TO COMPEL, Case No. 3:17-cv-06475-JD

1   information through an alternative forum or, as discussed next, obtain the requested information

2   through party discovery.

3   **C.     Any Production Of Records Should Be Made By Defendants.**

4   If the Court determines that records or information relating to the Brazilian Court

5   Proceedings or the Brazilian Arbitration Proceedings should be produced, the Court should order

6   Defendants to produce the records or information for two straightforward reasons related to the

7   protections afforded to nonparties under the Rules.

8   First, the Court should not order Apple, a nonparty, to produce records in violation of

9   another tribunal's order when that information is in the possession of a party to the litigation.  The

10  Rules and Courts protect nonparties from being placed in such circumstances.  *See Nidec Corp.*,

11  249 F.R.D. at 577 ("There is simply no reason to burden nonparties when the documents sought

12  are in the possession of the party defendant."); *High Tech Med. Instrumentation, Inc.*, 161 F.R.D.

13  at 88 (explaining that courts have "long held that nonparties subject to discovery requests deserve

14  extra protection from the courts."); *cf. Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241,

15  264 (2004) ("[W]hen the person from whom discovery is sought is a participant in the foreign

16  proceeding (as Intel is here), the need for [28 U.S.C.] § 1782(a) aid generally is not as apparent as

17  it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A

18  foreign tribunal has jurisdiction over those appearing before it, and can itself order them to

19  produce evidence.").  Ordering Apple to produce documents would inherently impose an undue

20  burden—it would subject Apple to liability in another jurisdiction.  Rule 26 protects Apple from

21  such an imposition.  *See* Fed. R. Civ. P. 26(b)(1) (providing that parties may obtain discovery that

22  is "proportional to the needs of the case, considering the issues at stake in the action, . . . and

23  whether the burden or expense of the proposed discovery outweighs its likely benefit.").

24  Second, even if the Court were to consider the relative burden in this instance, Defendants

25  are in a better position to seek the Brazilian court's leave and produce documents or information

26  subject to the secrecy order.  Again, Rule 26(b)(1) protects Apple under these circumstances,

27  providing that discovery may be obtained "considering . . . the parties' relative access to relevant

28  information [and] the parties' resources."  Defendants clearly have greater access to the relevant

LEWIS +
LLEWELLYN LLP

1    information and are in a better position to efficiently produce it.  For Apple to produce this

2    information, Apple would presumably be forced to move the Brazilian court for leave to make that

3    production—an expensive obligation in and of itself.  Furthermore, Parconia Limited's failed

4    efforts to access records of the Brazilian Court Proceedings suggest that such a motion from third-

5    party Apple Brazil would likely be futile.

6           Therefore, if the Court determines that *someone* should produce the documents and

7    information Plaintiffs seek, the Court should determine that Defendants be the ones to produce it.

8           **D.       Plaintiffs' Motion Should Be Denied For Failure To Seek A Protective Order.**

9           Finally, Apple asked Plaintiffs to seek entry of a two-tier protective order if Apple or this

10   Court determined that Apple was obligated to produce responsive information related to the

11   Brazilian Arbitration Proceedings or the Brazilian Court Proceedings.  Plaintiffs have failed to do

12   so, yet they nonetheless demand that Apple produce highly confidential arbitration and court

13   records in violation of another tribunal's confidentiality order.  Although Apple should not be

14   ordered to violate the order of another tribunal and produce the information that Plaintiffs seek, the

15   Court should not even consider the Motion absent Plaintiffs' express agreement to stipulate to an

16   order that protects the confidentiality of this information.  *See* Fed. R. Civ. P. 26(c)(1), 45(d)(3).

17   **IV.    CONCLUSION**

18          Accordingly, nonparty Apple Inc. requests that the Court deny Plaintiffs' motion to compel

19   Apple to produce documents and information pursuant to the Subpoena.

20

21   Date: February 14, 2019                      LEWIS & LLEWELLYN LLP
                                                  Marc R. Lewis
22                                                John F. Frost

23

24                                         By:  _____
                                                Marc R. Lewis
25                                              Attorneys for Apple Inc.

26

27

28

LEWIS +
LLEWELLYN LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

This is to certify that on the date below, I caused a true and correct copy of NONPARTY APPLE INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL to be served via eService on the Northern District of California's CM/ECF filing system for this matter.

Dated: February 14, 2019

Marc R. Lewis

LEWIS +
LLEWELLYN
LLP